## Nos. 2016-2073, -2075, -2076, -2078

# United States Court of Appeals
# for the Federal Circuit

—————— ♦ ——————

APOTEX INC.,

*Plaintiff – Appellee,*

*v.*

DAIICHI SANKYO, INC., DAIICHI SANKYO CO., LTD.,
MYLAN PHARMACEUTICALS INC.,

*Defendants – Appellants.*

*Appeals from the United States District Court for the Northern District of
Illinois in Case Nos. 12-cv-9295 and 15-cv-3695, Judge Sharon Coleman*

## PLAINTIFF-APPELLEE APOTEX INC.'S MOTION
## FOR SUMMARY AFFIRMANCE OR,
## ALTERNATIVELY, FOR EXPEDITED PROCEEDINGS

Steven E. Feldman
Sherry L. Rollo
Daniel R. Cherry
HAHN LOESER & PARKS LLP
125 S. Wacker Drive, Suite 2900
Chicago, Illinois 60606
Telephone: (312) 637-3000
Facsimile: (312) 637-3001

*Attorneys for Plaintiff-Appellee
APOTEX INC.*

May 16, 2016

FORM 9.  Certificate of Interest

Form 9
Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Apotex, Inc. _____  **v.**  Daiichi Sankyo, Inc. _____

Case No.  2016-2073, -2075, -2076, -2078

## CERTIFICATE OF INTEREST

Counsel for the:☐
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee)☐ (amicus)☐ (name of party)

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Apotex, Inc. | Apotex, Inc. | Apotex Pharmaceutical Holdings, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

Steven E. Feldman, Sherry L. Rollo, Daniel R. Cherry, Leonard Friedman, Hahn Loeser & Parks, LLP, 125 South Wacker Drive, Suite 2900, Chicago, IL 60606

James P. White, Husch Blackwell, LLP, 120 South Riverside Plaza, Suite 2200, Chicago, IL 60606

Lawrence Rosenthal, One University Drive, Orange, CA  92866

May 16, 2016 _____

Date

_Signature of counsel_

Steven E. Feldman

Printed name of counsel

Please Note: All questions must be answered

cc:  see attached _____

Reset Fields

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF RELATED CASES ....................................................1

INTRODUCTION ...................................................................................2

BACKGROUND ....................................................................................3

ARGUMENT ..........................................................................................5

CONCLUSION AND RELIEF REQUESTED ........................................9

STATEMENT OF OPPOSITION ........................................................10

# TABLE OF AUTHORITIES

### CASES

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
    2016 WL 98572 (N.D. Ill. Jan. 8, 2016) ...................................................... 1, 3, 5

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
    781 F.3d 1356 (Fed. Cir. 2015) ................................................................. passim

*Chem. Eng. Corp. v. Marlo, Inc.*,
    754 F.2d 331 (Fed. Cir. 1984) .................................................................6

*GPX Intern. Tire Corp. v. U.S.*,
    678 F.3d 1308 (Fed. Cir. 2012) .............................................................6

*Groendyke Transport, Inc. v. Davis*,
    406 F.2d 1158 (5th Cir. 1969) ...............................................................5

*Joshua v. U.S.*,
    17 F.3d 378 (Fed. Cir. 1994) .................................................................5

*Purdue Pharm. Prod. v. Actavis Elizabeth, LLC*,
    2014 WL 1394178 (D.N.J. Apr. 9, 2014) .............................................8

*Seattle Children's Hosp. v. Akorn, Inc.*,
    2011 WL 6378838 (N.D. Ill. Dec. 20, 2011) .......................................8

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252, 97 S.Ct. 555 (1977) .......................................................8

### STATUTES

21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA) .................................................................4, 6

## STATEMENT OF RELATED CASES

Previously, this Court (Taranto, J., joined by Mayer and Clevenger, J.J.) reversed the District Court's dismissal, on jurisdictional grounds, of the first of the two cases now on appeal. *Apotex, Inc. v. Daiichi Sankyo, Inc.*, Nos. 2014-1282, -1291, 781 F.3d 1356 (Fed. Cir. 2015) ("*Apotex II*"), *rev'g*, 2014 WL 114127, No. 12-cv-9295 (ND. Ill. Jan. 9, 2014) ("*Apotex I*"), *cert. denied*, 136 S.Ct. 481 (2015). On remand, the District Court entered summary judgment of noninfringement in that case, as well as in the second case now on appeal. *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 2016 WL 98572, Nos. 12-cv-9295, 15-cv-3695 (N.D. Ill. Jan. 8, 2016) ("*Apotex III*").

The appeals from No. 12-cv-9295 concern an ANDA seeking to sell the generic equivalent of the drug Benicar and the appeals from No. 15-cv-3695 concern an ANDA for the drug Benicar HCT.  *Id.*  U.S. Patent No. 6,878,703 ("the '703 patent") is the sole patent at issue in both cases.  *Id.*  This patent and one or more of these drugs are at issue in the following district court actions:  *Torrent Pharmaceuticals Limited v. Daiichi Sankyo, Inc.*, No. 1:16-cv-02988 (N.D. Ill.); *Sandoz Inc. v. Daiichi Sankyo, Inc.*, No. 2:16-cv-00081 (E.D. Va.); *Aurobindo Pharmaceuticals Limited v. Daiichi Sankyo, Inc.*, No. 1:16-cv-04876 (N.D. Ill.).

Apotex is unaware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in these appeals.

# **INTRODUCTION**

Appellee Apotex brought these suits for the purpose of triggering forfeiture of Appellant Mylan's presumptive 180-day exclusivity that otherwise blocks full generic competition.  But Mylan will be able to avoid that forfeiture unless all proceedings in this Court, including issuance of mandate, are completed before August 11.

The merits have never been at issue.  The sole impediment to final disposition of these cases has been Appellants' repeated arguments that subject matter is lacking.  Undeterred by this Court's ruling in *Apotex II* that Apotex had standing to bring suit, Appellants argued on remand that Apotex has lost that standing because FDA has not yet decided whether to approve Apotex's ANDAs. The District Court quite correctly refused to be drawn into speculation about what the FDA was going to do.

Because time is truly of the essence, and there is no sound basis for reversing the District Court, Apotex requests summary affirmance.  Alternatively, if for some reason summary affirmance were not granted, Apotex requests an abbreviated briefing schedule and prompt oral argument, if such is deemed necessary, to ensure that the case can be decided and mandate issued before August 11.

## BACKGROUND

Appellant Daiichi holds the NDAs for the drugs Benicar and Benicar HCT. *Apotex II*, 781 F.3d at 1358; *Apotex III* at APPX11.[1]  Daiichi listed two patents with FDA as covering these drugs.  *Id.*  Appellant Mylan filed ANDAs challenging both patents.  *Id.*  In earlier litigation between Daiichi and Mylan, the earlier-expiring U.S. Patent No. 5,616,599 ("the '599 patent") was held valid and infringed.  *Apotex II*, 781 F.3d at 1359.  As a consequence, Mylan is enjoined from entering the market until October 25, 2016.  *Id.*  After receiving Mylan's paragraph IV certification, Daiichi disclaimed the later-expiring '703 patent.  *Id.*  Accordingly, the '703 patent does not block Mylan's market entry.  *Id.*  Other generics like Appellee Apotex are, however, potentially blocked from market entry on October 25, 2016 by a 180-day exclusivity period presumptively available to Mylan by reason of its having been the first to challenge the '703 patent.  *Id.* at 1360.

Apotex brought these suits for a declaration of noninfringement of the '703 patent in order to trigger forfeiture of Mylan's potential 180-day exclusivity.  *Id.*; *Apotex III* at APPX11.  One of the requirements of the relevant forfeiture provision of the Hatch-Waxman statute is "a final decision from which no appeal (other than a petition to the Supreme Court for a writ of certiorari) has been or can be taken

---

[1] This motion is accompanied by an Appendix containing the relevant rulings by the District Court.

that the patent is invalid or not infringed." 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA), quoted and explained in *Apotex II*, 781 F.3d at 1368-69. This Court has called the date of achievement of this condition the "non-infringement finality date." *Id.* at 1369.

This non-infringement finality date must come "early enough." *Apotex II*, 781 F.3d at 1369; *see also id.* at 1360 ("soon enough"). Mylan can avoid forfeiture of its potential 180-day exclusivity by commencing marketing within 75 days of this non-infringement finality date. *Id.* at 1369. Although Mylan is enjoined from marketing prior to October 25 of this year, it is free to market thereafter. *Id.* at 1359. That means that if this non-infringement finality date is not before August 11, 2016, then forfeiture of Mylan's potential exclusivity would not be assured because Mylan can launch its product within 75 days of that date.

Noninfringement has never been at issue because, as this Court pointed out, "non-infringement of the '703 patent follows as a matter of law from the fact that Daiichi has formally disclaimed it." *Apotex II¸* 781 F.3d at 1359. Daiichi's and Mylan's sole argument has been that there is no subject matter jurisdiction. In *Apotex I*, the District Court dismissed the first filed case on that ground. APPX7. That was reversed by this Court in *Apotex II*, 781 F.3d 1356. One of the arguments raised, and rejected, in the earlier appeal was that FDA's tentative approval of Apotex's ANDA was a prerequisite to Apotex's standing to bring this suit. *Id.* at

1364-71. This Court held that, while FDA's tentative approval is another requirement for forfeiture, tentative approval is not a requirement to bring suit to obtain a non-infringement finality date. *Id.*

After remand, the District Court entered summary judgment of noninfringement in both cases, *Apotex III* at APPX15, and then denied Appellants' Fed. R. Civ. Pro. 59(e) motions to reconsider. APPX16 (*Apotex, Inc. v. Daiichi Sankyo, Inc.*, Nos. 12-cv-9295, 15-cv-3695 (N.D. Ill. Apr. 13, 2016) ("*Apotex IV*")). Appellants' argument opposing judgment was that Apotex had lost its standing to sue because FDA had not yet granted tentative approval. *Apotex III* at APPX13-APPX14; *Apotex IV* at APPX16. The District Court held that appellants had not shown that FDA will not approve Apotex's ANDA and that "undue speculation" about what FDA might do was not required. *Apotex IV* at APPX17.

## ARGUMENT

There are "at least two circumstances under which summary disposition is necessary and proper." *Groendyke Transport, Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969), *cert. denied*, 394 U.S. 1012 (1969). "The first comprises those cases where time is truly of the essence." *Id.* The second is "when the position of one party is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists." *Joshua v. U.S.*, 17 F.3d 378, 380 (Fed. Cir. 1994), *citing Groendyke*, 406 F.2d at 1162; *see also Chem. Eng. Corp. v.*

*Marlo, Inc.*, 754 F.2d 331, 334-35 (Fed. Cir. 1984) (Summary affirmance entered *sua sponte* where district court's grant of "[s]ummary judgment was obviously appropriate."). Either circumstance would be sufficient. Both are present here.

Time is truly of the essence. Unless the non-infringement finality date is obtained before August 11, Mylan can avoid forfeiture of its 180-day exclusivity, rendering any subsequent disposition of these appeals potentially ineffective to pave the way for full generic competition. The "non-infringement finality date" is the date "from which no appeal (other a petition to the Supreme Court for a writ of certiorari) has been or can be taken." *Apotex II*, 781 F.3d at 1368-69, quoting 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA). An appellate court's decision is not final until its mandate issues. *GPX Intern. Tire Corp. v. U.S.*, 678 F.3d 1308, 1312 (Fed. Cir. 2012). That means that there are only 86 days from the filing date this motion in which to complete all proceedings in this Court (briefing, argument, decision, rehearing, mandate). There is simply no time for business as usual in this case.

Furthermore, there is no substantial question whether the District Court should be affirmed. Noninfringement has never been an issue because the patent has been disclaimed. *Apotex II*, 781 F.3d at 1359. This Court has already held that the requirements for subject matter jurisdiction were met. *Id.* at 1371. This Court explained that, although tentative approval is one of the requirements for causing

6

forfeiture, "tentative approval for Apotex is not a precondition to adjudicating the patent issue." *Id.* at 1365.

Appellants' argument is that, although Apotex had standing when suit was brought per this Court's earlier decision, Apotex has since lost standing because FDA has not yet granted tentative approval. *See Apotex III* at APPX14; *Apotex IV* at APPX16. Appellants told the District Court that "Apotex is unlikely to have its ANDAs tentatively approved by the FDA in light of past regulatory violations and partial import bans from two of Apotex's production facilities" and sought discovery into the tentative approval process for Apotex's ANDAs. *Apotex IV* at APPX16-APPX17.

If Appellants had their way, these law suits would be bogged down in discovery, not into the merits, which are not disputed, but into what FDA is going to do with Apotex's ANDAs. After that discovery, what was the district court then supposed to do? Hold a hearing during which competing experts opine about what FDA was going to do? And would things even end with that — or would Appellants from time to time ask for further discovery and proceedings to address their latest speculations about what FDA will do?

The District Court quite rightly refused to follow the Appellants' suggestions, explaining that:

> [T]he defendants have presented no evidence that the FDA *will not* approve Apotex's ANDAs, but have instead offered speculation about

what the FDA might do based on limited evidence unrelated to the pending ANDAs.    Such speculation is wholly insufficient to demonstrate a barrier "so certain as to bar standing to obtain removal of the barrier at issue" or to require this Court "to engage in undue speculation as a predicate for finding that the plaintiff has the requisite personal stake in the controversy." *Arlington Heights* [*v. MHDS*], 429 U.S. [252] at 262, 97 S.Ct. 555 [(1977)].    Even if the defendants' request for discovery on this issue had been permitted, the evidence discovered could only have fueled further speculation about what the FDA might ultimately do.

*Apotex IV* at APPX17 (court's italics).

Other district courts have likewise rejected arguments that the second generic filer lacks standing since there was "no telling if or when the FDA may approve" the second filer's ANDA.  *Purdue Pharm. Prod. v. Actavis Elizabeth, LLC*, 2014 WL 1394178 at *8, Nos. 12-cv-5311, 13-cv-5003 (D.N.J. Apr. 9, 2014), *aff'd*, 627 Fed. Appx. 931 (Fed. Cir. 2016); *Seattle Children's Hosp. v. Akorn, Inc.*, 2011 WL 6378838 at *8, No. 10-cv-5118 (N.D. Ill. Dec. 20, 2011). As explained in *Seattle Children's*, both case law and congressional intent, "as well as the realities and time commitments associated with complex litigation," support simultaneous pursuit of tentative approval from FDA and a non-infringement finality date in the courts.  *Id.*; *see also Purdue*, 2014 WL 1394178 at *7 (quoting an FDA letter to Congress urging "simultaneous running of the periods for FDA approval and for the resolutions of patent infringement issues.").

In *Apotex II*, this Court examined the statutory scheme, and found no statutory provision making tentative approval a condition precedent to standing.

781 F.3d at 1365-66. Likewise, there is no statutory provision making delay in receiving tentative approval from FDA a condition subsequent that defeats standing. Under the statutory scheme, a pending ANDA seeking tentative approval suffices to support standing for a civil action to obtain a non-infringement finality date.

The forfeiture system set up by Congress assigns the courts and FDA separate tasks, befitting their relative realms of expertise. The courts decide the patent issues (here, undisputed). FDA decides the regulatory issues. Congress did not authorize the courts in patent infringement actions to institute their own proceedings to mimic or presage FDA's considerations. Appellants' attempts to second guess Congress's "judgment call" should be rejected. *Apotex II*, 781 F.3d at 1365.

## CONCLUSION AND RELIEF REQUESTED

Time being of the essence, and there being no sound basis for Appellants to obtain reversal of the judgment, summary affirmance should be entered forthwith and the time for entry of the mandate shortened.

If for some reason summary affirmance were not granted, Apotex requests an abbreviated briefing schedule and prompt oral argument, if such is deemed necessary, to ensure that the case can be decided and mandate issued in advance of the August 11, 2016 forfeiture deadline.

Apotex further requests that Appellants be ordered to respond to this motion within no more than seven calendar days.

## STATEMENT OF OPPOSITION

Counsel for Apotex contacted counsel for Appellants on March 13, 2016, to discuss this motion. Mylan opposes this motion and will file a response. As of the time of filing, counsel for Apotex had not received a response from counsel for Daiichi. However, given the nature of this motion, counsel for Apotex believes that Daiichi also will oppose the motion and will file a response.

Respectfully submitted,

HAHN LOESER & PARKS LLP

Date: May 16, 2016            By:    /s/ Steven E. Feldman
                                    Steven E. Feldman
                                    Sherry L. Rollo
                                    Daniel R. Cherry
                                    HAHN LOESER & PARKS LLP
                                    125 S. Wacker Drive, Suite 2900
                                    Chicago, Illinois 60606
                                    Telephone: (312) 637-3000
                                    Facsimile: (312) 637-3001

                                    Attorneys for Plaintiff
                                    APOTEX INC.

Nos. 2016-2073, -2075, -2076, -2078

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APOTEX, INC.,
*Plaintiff-Appellee,*

v.

DAIICHI SANKYO, INC., DAIICHI SANKYO CO., LTD.,
MYLAN PHARMACEUTICALS INC.,
*Defendants – Appellants.*

Appeals from the United States District Court for the Northern District of Illinois
in Case Nos. 12-cv-9295 and 15-cv-3695, Judge Sharon Coleman

## DECLARATION OF STEVEN E. FELDMAN

1.      I, Steven E. Feldman, hereby declare that I am a partner in the law

firm of Hahn Loeser & Parks LLP and a member of the Bar of this Court.  I

represent Plaintiff-Appellee Apotex Inc. in these appeals.

2.      The facts set out in Apotex's motion for summary affirmance are true

and correct and are based on my personal knowledge.

3.      I declare under penalty of perjury under the laws of the United States

of America that the foregoing is true and correct.

Dated:  May 16, 2016                    /s/ Steven E. Feldman
                                        Steven E. Feldman
                                        Hahn Loeser & Parks LLP
                                        125 S. Wacker Drive, Suite 2900
                                        Chicago, Illinois 60606
                                        Telephone: (312) 637-3000
                                        Facsimile: (312) 637-3001

# APPENDIX IN SUPPORT OF PLAINTIFF-APPELLEE APOTEX INC.'S MOTION

# **TABLE OF CONTENTS**

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* No. 12-cv-9295,
    Memorandum Opinion and Order,
    (N.D. Ill. Jan. 9, 2014) ....................................................................APPX1

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* Nos. 12-cv-9295, 15-cv-3695,
    Memorandum Opinion and Order,
    (N.D. Ill. Jan. 8, 2016) ....................................................................APPX8

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* Nos. 12-cv-9295, 15-cv-3695,
    Order,
    (N.D. Ill. Apr. 13, 2016) ...............................................................APPX16

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* No. 12-cv-9295,
    Final Judgment in Civil Case,
    (N.D. Ill. Mar. 2, 2016)..................................................................APPX18

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* No. 15-cv-3695,
    Final Judgment in Civil Case,
    (N.D. Ill. Mar. 2, 2016)..................................................................APPX20

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* Nos. 12-cv-9295, 15-cv-3695,
    Daiichi Notice of Appeal,
    (N.D. Ill. May 13, 2016) ...............................................................APPX22

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* No. 12-cv-9295,
    Mylan Notice of Appeal,
    (N.D. Ill. May 13, 2016) ...............................................................APPX25

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* No. 15-cv-3695,
    Mylan Notice of Appeal,
    (N.D. Ill. May 13, 2016) ...............................................................APXP28

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| APOTEX, INC, | ) | |
| Plaintiff, | ) | |
| | ) | 12-cv-9295 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| DAIICHI SANKYO, INC. and DAIICHI | ) | |
| SANKYO CO., LTD. | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

The defendants Daiichi Sankyo Co. Ltd. and Daiichi Sankyo, Inc. (collectively "Daiichi")
listed United States Patents Nos. 6,878,703 (the "'703 Patent") and 5,616,599 (the "'599 Patent")
in connection with their new drug Benicar, consisting of olmesartan medoxomil.  Daiichi
Sankyo, Co., Ltd. is a Japanese pharmaceutical company and the parent company to Daiichi
Sankyo., Inc.  This case involves Plaintiff Apotex, Inc.'s ("Apotex") efforts to obtain the Food
and Drug Administration's ("FDA") approval to market a generic version of Daiichi's Benicar
drug.  Apotex seeks a declaratory judgment of noninfringement of the '703 Patent.  Pursuant to
Fed. R. Civ. P. 12(b)(1), Daiichi moves to dismiss Apotex's amended complaint for lack of
subject matter jurisdiction.  For the following reasons, Daiichi's motion to dismiss is granted in
its entirety.

### Background

   *1. Statutory Framework*

The Hatch-Waxman Act (the "Act") governs the FDA's approval process for prescription
drugs.  The Act was created to "'strike a balance between two competing policy interests: (1)
inducing pioneering research and development of new drugs and (2) enabling competitors to
bring low-cost, generic copies of those drugs to market.'"  *Caraco Pharm. Labs., Ltd. v. Forest
Labs., Ltd.*, 527 F.3d 1278, 1282 (Fed. Cir. 2008) (citing *Andrx Pharms., Inc. v. Biovail Corp.*,
276 F.3d 1368, 1371 (Fed. Cir. 2002)).  Pursuant to the Act, brand-name (or "pioneering")
pharmaceutical companies seeking to market new, previously unapproved drugs are required to
file a New Drug Application ("NDA") with the FDA.  *Seattle Children's Hosp. v. Akorn, Inc.*,
No. 10-CV-5118, 2011 U.S. Dist. LEXIS 145998 at *2 (N.D. Ill. Dec. 20, 2011); *see also* 21

U.S.C. § 355(a), (b).  As part of the NDA process, a pioneering drug company must submit information regarding the new drug's safety and efficacy obtained from clinical trials.  21 U.S.C. § 355(b)(1).  The pioneering drug company must also provide the FDA with information including "all patents covering its drug or the methods of using the drug with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug.'"  *Caraco Pharm. Labs.*, 527 F.3d at 1282 (citing 21 U.S.C. § 355 (b)(1), (c)(2)).  The FDA lists these patents provided by the drug company in a publication called the "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly known as the "Orange Book."  21 USC § 355(j)(2)(A)(i).  Drugs approved by the FDA are known as "listed drugs."  *Id*.

To encourage the development of generic versions of listed drugs, the Hatch-Waxman Act provides for an expedited and far cheaper approval process for generic versions of patented drugs to enter the market.  This process is known as the "Abbreviated New Drug Application" ("ANDA").  *Caraco Pharm. Labs.*, 527 F.3d at 1282.  Under the ANDA process, generic drug companies are not required to conduct their own independent clinical trials to prove the safety and efficacy of their drugs.  21 U.S.C. § 355(j)(2)(A)(iv).  Instead generic drug companies can rely on the research of a pioneering pharmaceutical company so long as the generic drug company demonstrates that its generic drug product is the "bioequivalent" to a NDA listed drug.  *Id*.  An ANDA applicant must also submit one of four certifications addressing each of the patents listed in the Orange Book that cover the relevant listed drug.  21 U.S.C. §355(j)(2)(A)(vii). Specifically the ANDA filer must certify that either: (I) no patent information has been filed with the FDA; (II) the patent has expired; (III) the patent will expire on a particular date and approval of the ANDA should be deferred until expiration; or (IV) in the opinion of the ANDA applicant, the patent is invalid or will not be infringed by the manufacture, use, or sale of the generic drug.  *Seattle Children's Hosp.*, 2011 U.S. Dist. LEXIS 145998 at *3. A certification that an Orange-Book-listed patent is invalid or not infringed is commonly known as a "Paragraph IV" certification.  Where an ANDA contains a Paragraph IV certification, the timing of approval depends on two events: (i) whether the holder of the listed patent brings an infringement suit within 45 days of receiving notice of the ANDA filing, and (ii) whether the company seeking approval was the first to file an ANDA with a Paragraph IV certification to the listed patent.  *Id*. at *4; *see also* 21 USC 355(j)(5)(B)(iii).

The Hatch-Waxman Act provides that the mere act of filing a Paragraph IV ANDA for a listed drug constitutes an act of patent infringement. *Caraco Pharm. Labs.*, 527 F.3d at 1283. If a patentee or NDA holder does not bring suit within 45 days of receiving notice of a Paragraph IV certification filing, the FDA will approve the ANDA immediately. If the pioneering drug company does bring suit within 45 days, the FDA may not approve the ANDA for 30 months, unless a court decides that the patent(s)-in-suit are invalid or not infringed. *Seattle Children's Hosp.*, 2011 U.S. Dist. LEXIS 145998 at *4. Where a generic company is the first to file an ANDA Paragraph IV certification for a listed patent, the Hatch-Waxman Act grants that company a 180-day period of generic marketing exclusivity during which time the FDA will not approve a later filed Paragraph IV ANDA based on the same NDA. In 2003, Congress enacted the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA") which amended the Hatch-Waxman provisions governing the commencement of the 180-day exclusivity period. *Id.* at *5. After the enactment of the MMA, the exclusivity period can only be triggered by the first-filer's commercial marketing of its generic drug product. However, under the MMA, there is now a forfeiture provision. The first-filer of a Paragraph IV ANDA may forfeit its exclusivity period if a subsequent ANDA filer obtains a final judgment of invalidity or noninfringement. *Id.*

   2. *Factual Background*

Daiichi holds an approved NDA for Benicar, a drug used for the treatment of high blood pressure. As part of the process for filing its Benicar NDA, Daiichi listed Patents '599 and '703 in the FDA's Orange Book in connection with its NDA No. 21-286. The first ANDA applicant to file a Paragraph IV certification for Daiichi's '599 and '703 patents was Mylan Laboratories, Ltd. ("Mylan").[1] Accordingly, Mylan is entitled to 180 days of market exclusivity regardless of whether it established that the Orange Book patents were invalid or not. *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1356 (Fed. Cir. 2008) (noting that "[a]ll that is required for the first Paragraph IV ANDA filer to receive the 180-day exclusivity period is that it submits a substantially complete ANDA that contains a Paragraph IV Certification"). The start of the 180-day exclusivity period can only be triggered by Mylan's marketing of its generic drug. 21 U.S.C. § 355(j)(5)(B)(iv). If however, a subsequent filer obtains a final judgment of invalidity or

---

[1] Mylan is presently not a party in this case. Mylan has moved to intervene and has filed its own motion to dismiss should this Court grant its motion to intervene.

noninfringement, Mylan must begin marketing within 75 days or forfeit its exclusivity period. 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA); *see also Seattle Children's Hosp.*, 2011 U.S. Dist. LEXIS 145998 at *5-6.

After Mylan filed its Paragraph IV ANDA regarding both Patents '703 and '599, Daiichi sued Mylan on July 31, 2006 for infringement of the '599 patent in a district court in New Jersey. Prior to suing Mylan regarding the '599 patent, Daiichi statutorily disclaimed every claim of the '703 patent pursuant to 35 U.S.C. § 253. Eventually the district court found that the '599 patent was valid and that Mylan infringed the '599 patent. Mylan never brought a declaratory judgment action regarding the disclaimed '703 patent. In the instant case, Apotex seeks a final judgment of invalidity or noninfringement regarding the '703 patent in the hopes of compelling Mylan to begin marketing within 75 days or forfeiting its exclusivity period. Daiichi moves to dismiss Apotex's complaint for lack of subject matter jurisdiction. Daiichi argues that there is no case or controversy here because the '703 patent was disclaimed. Apotex argues that despite Daiichi's disclaimer, the '703 patent continues to exclude competition in the market because it remains listed in the FDA's Orange Book.

**Legal Standard**

Pursuant to Fed. R. Civ. P. 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. Rule 12(b)(1) motions are premised on either facial or factual attacks on jurisdiction. *Simonian v. Oreck Corp.*, No. 10 C 1224, 2010 U.S. Dist. LEXIS 86832, at *3-4 (N.D. Ill. Aug. 23, 2010). If the defendant makes a factual attack on the plaintiff's assertion of subject matter jurisdiction, it is proper for the court to look beyond the jurisdictional allegations in the complaint and to view whatever evidence has been submitted in response to the motion. *Id*. The plaintiff must then put forth "competent proof" that the court has subject matter jurisdiction. *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

Federal courts have subject matter jurisdiction over declaratory judgment actions brought by Paragraph IV ANDA filers to establish noninfringement or invalidity of Orange-Book-listed patents to the extent that they present an Article III case or controversy. *Caraco Pharm. Labs.*, 527 F.3d at 1285; *see also* 31 U.S.C. § 271(e)(5). To determine whether a declaratory judgment action satisfies the Article III case or controversy requirement, the court must inquire as to "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (U.S. 2007). "[A]n action is justiciable under Article III only where (1) the plaintiff has standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), (2) the issues presented are ripe for judicial review, *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), and (3) the case is not rendered moot at any stage of the litigation, *United States Parole Comm'n. v. Geraghty*, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980)." *Caraco Pharm. Labs.*, 527 F.3d at 1291; *see also Seattle Children's Hosp.*, 2011 U.S. Dist. LEXIS 145998, at *13.

In order to have standing, a party must demonstrate: (1) an alleged injury in fact, a harm suffered by the plaintiff that is concrete and actual or imminent; (2) causation, a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability, a likelihood that the requested relief will redress the alleged injury. *Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008). "The Federal Circuit has recognized, in the context of the Hatch-Waxman Act, that the creation of 'an independent barrier to the drug market' by a brand drug company 'that deprives [the generic company] of an economic opportunity to compete' satisfies the injury-in-fact and causation requirements of Article III standing." *Seattle Children's Hosp. v. Akorn, Inc.*, No. 10-CV-5118, 2011 U.S. Dist. LEXIS 145998, at *15 (N.D. Ill. Dec. 20, 2011) (citing *Caraco*, 527 F.3d at 1285 and *Prasco*, 537 F.3d at 1339).

**Discussion**

Daiichi moves to dismiss Apotex's complaint arguing that there can be no justiciable dispute concerning a disclaimed patent. Apotex concedes that the '703 patent is no longer enforceable, but argues that it continues to exclude competition in the market and continues to have preclusive effect. (Apotex Resp. at 1 and 5). Apotex argues that because a judgment has never been entered stating that the '703 patent is invalid, the '703 patent prevents it from selling its competing generic version of the Benicar drug until the end of Mylan's 180 day exclusivity period.

The Federal Circuit has recognized that prior to the "2003 [MMA] amendments, 'NDA holders employed several methods of delaying the early resolution of patent disputes.'" *Dey Pharma, LP v. Sunovion Pharms., Inc.*, 677 F.3d 1158, 1160 (Fed. Cir. 2012) (citing *Janssen Pharmaceutica, N.V. v. Apotex*, Inc., 540 F.3d 1353, 1357 (Fed. Cir. 2008). In some cases where

NDA patent holders listed multiple patents in the FDA's Orange Book, NDA holders developed a strategy where they would initiate suit on only one of the patents after receiving notice of a Paragraph IV ANDA filing.  This would entitle the NDA holder to a 30-month stay before FDA approval of the generic drug.  Moreover, even if the one patent sued on was found invalid or not infringed by the generic drug, the ANDA filer would still run the risk of infringing on the other patents implicated, but not sued on by the NDA holder.  "To address this problem Congress specified that an ANDA filer who is not sued within 45 days could bring a declaratory judgment action under 28 U.S.C. § 2201 against the NDA holder."  *Dey Pharma*, 677 F.3d at 1160-1161 (citing 21 U.S.C. § 355(j)(5)(C)).  These amendments also protect subsequent ANDA filers' interest in the early resolution of patent rights due to the 180-day exclusivity period afforded successful first ANDA filers.  "If the first ANDA filer 'parked' its 180-day exclusivity under an agreement with the brand-name company, a subsequent ANDA filer could independently trigger the first filer's exclusivity period through a declaratory judgment action leading to a final judgment of invalidity or  noninfringement, thereby accelerating the second ANDA filer's ability to market its drug."  *Dey Pharma*, 677 F.3d at 1160-1161.

Here, Patent '703 does not create an independent barrier that deprives Apotex of an economic opportunity to compete.  Because Daiichi disclaimed all claims associated with the '703 Patent pursuant to 35 U.S.C. § 253, both Daiichi and Apotex no longer hold any meaningful interest in the now disclaimed patent.  "Disclaiming particular claims under § 253 'effectively eliminate[s] those claims from the original patent.'"  *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (*citing Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998)).  "In other words, upon entry of a disclaimer under § 253, we treat the patent as though the disclaimed claim(s) had 'never existed.'"  *Genetics Inst.*, 655 F.3d at 1299; *see also Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996).  Apotex concedes that the '703 patent was statutorily disclaimed and does not dispute the effects of such a disclaimer.  Nevertheless, Apotex argues that this Court must still decide whether its generic drug infringes on the non-existent '703 patent because the patent remains listed in the Orange Book.  Daiichi, however, requested that the FDA delist the '703 Patent on July 11, 2006.  It is unclear why the FDA has yet to actually remove the patent from the Orange Book.

Apotex relies on *Caraco Pharm. Labs.*, 527 F.3d 1278, to support its argument that there is jurisdiction where a first ANDA filer has not begun its exclusivity period and a subsequent

ANDA filer seeks a declaratory judgment of noninfringement to eliminate an independent barrier to regulatory approval. *Caraco*, however, is distinguishable from the case at hand by the important fact that the patent at issue in that case was never disclaimed. The Federal Circuit held that by preventing the FDA from approving ANDAs of generic drug manufacturers, the NDA holder was effectively excluding Caraco from offering what it claimed to be a non-infringing generic drug. Unlike *Caraco*, there is no such exclusion in the instant case. Daiichi is not preventing the FDA from approving Apotex's ANDA through any delay tactics or strategies similar to the NDA holder's covenant not to sue in *Caraco*. Moreover, all parties acknowledge that Daiichi can never assert the '703 patent against any ANDA filer or any entity as the patent no longer exists by virtue of Daiichi's disclaimer of all claims associated with the patent. The mere fact that the FDA has failed for some reason to delist Patent '703, despite Daiichi's request, does not create a case or controversy by which Apotex may seek a declaratory judgment regarding a nonexistent patent. Daiichi disclaimed Patent '703 and properly requested that the Orange Book be updated to reflect Daiichi's disclaimer. Although in *Seattle Children's Hosp.*, 2011 U.S. Dist. LEXIS 145998, the court held that notwithstanding an NDA holders unilateral covenant not to sue, a case or controversy continued to exist between the parties because of the continued listing of the patent in the FDA's Orange Book; in that case, again, the listed patent was never disclaimed. Accordingly, in that case, the patent actually served as an independent barrier to the approval of the defendant's ANDA. Here, the '703 patent continues to be listed, by no error on Daiichi's part, even though the patent was disclaimed. This is insufficient to meet the case and controversy standing requirements under Article III.

**Conclusion**

For the foregoing reasons, Daiichi's motion to dismiss is granted in its entirety. Given this Court's ruling granting Daiichi's motion to dismiss, non-party Mylan's motions are moot.

IT IS SO ORDERED.

Date: January 9, 2014

_____
Sharon Johnson Coleman
United States District Judge

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| APOTEX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case Nos. 12-cv-9295, 15-cv-3695 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| DAIICHI SANKYO, INC., DAIICHI | ) | |
| SANKYO CO., LTD., and MYLAN | ) | |
| PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

This opinion addresses *Apotex, Inc., v. Daiichi Sankyo, Inc.*, No. 12-cv-9295 ("Apotex I") and

*Apotex, Inc. v. Daiichi Sankyo, Inc.*, No. 15-cv-3695 ("Apotex II"), which concern plaintiff Apotex,

Inc.'s ("Apotex") efforts to obtain the Food and Drug Administration's ("FDA") approval to

market generic versions of the olmesartan medxoxomil based drugs Benicar and Benicar HCT,

respectively.  The original defendants, pharmaceutical company Daiichi Sankyo, Inc. and its parent

company Daiichi Sankyo Co. Ltd. (collectively "Daiichi"), are currently the sole producer of Benicar

and Benicar HCT.  In connection with its applications to produce those drugs, Daiichi listed United

States Patents Nos. 6,878,703 (the "703 patent") and 5,616,599 (the "599 patent") with the FDA.

The intervening defendant, Mylan Pharmaceuticals, Inc., is a rival drug manufacturer with approved

applications to market generic versions of Benicar and Benicar HCT once Daiichi's statutory period

of market exclusivity ends.  In both *Apotex I and Apotex II*, Apotex seeks a declaratory judgment of

non-infringement of Daiichi's '703 patent, which would allow Apotex to bring its generic drugs to

market sooner than it would otherwise be able by reducing the period of market exclusivity to which

Mylan's generic versions of Benicar and Benicar HCT would otherwise be entitled.  Apotex moves

this Court to grant summary judgment in its favor in both of its cases.  For the following reasons, Apotex's motions for summary judgment are granted.

**Background**

*1. Statutory Framework*

The Hatch-Waxman Act (the "Act") governs the FDA's approval process for prescription drugs.  The act was created to strike a balance between the policy goals of inducing drug companies to research and develop new drugs and enabling competing drug companies to bring lower-cost, generic copies of those drugs to market.  *Caraco Pharm. Labs., Ltd. v. Forest Labs., Ltd.,* 527 F.3d 1278, 1282 (Fed. Cir. 2008).  Pursuant to the act, drug companies seeking to market new, previously unapproved drugs are required to file a New Drug Application ("NDA") with the FDA.  21 U.S.C. § 355.  As part of the NDA process, the drug company must conduct clinical trials demonstrating the drug's safety and efficacy.  *Id.*  The company must also identify "all patents covering its drug or the methods of using the drug with respect to which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug."  *Caraco Pharm. Labs., Ltd.*, 527 F.3d at 1282.  Those patents are then listed by the FDA in a publication commonly known as the "Orange Book."

To encourage the development of generic drugs, the Act provides for a far simpler approval process, the Abbreviated New Drug Application ("ANDA"), for generic versions of previously approved drugs.  *Caraco Pharm. Labs., Ltd.*, 527 F.3d at 1282.  Under the ANDA process, a drug manufacturer is not required to conduct their own independent clinical trials so long as they can demonstrate that the generic drug is the bioequivalent to a drug with an approved NDA.  21 U.S.C. § 355(j)(2)(A).  The ANDA process also requires that the drug manufacturer file one of four certifications addressing each patent listed in the "Orange Book" in relation to the previously approved drug.  21 U.S.C. § 355(j)(2)(A)(vii).  Specifically, the ANDA filer must certify that either

(1) no patent information has been filed with the FDA, (2) the patent has expired, (3) the patent will expire on a particular date and approval of the ANDA should be deferred until then, or (4) that the ANDA applicant believes that the patent is invalid or that it would not be infringed by the generic drug. *Seattle Children's Hosp. v. Akorn, Inc.,* No. 10-cv-5118, 2011 U.S. Dist. LEXIS 145998 at *3 (N.D. Ill. Dec. 20, 2011) (Dow, J.). A certification that an orange-book-listed patent is invalid or is not infringed is commonly known as a "Paragraph IV" certification. Where an ANDA contains a Paragraph IV certification, the timing of approval depends on two events: whether the holder of the listed patent brings an infringement suit within 45 days of receiving notice of the ANDA filing and whether the company seeking approval was the first to file an ANDA with a paragraph IV certification for the listed patent. *Id.* at *4.

The Act provides that the filing of a Paragraph IV certification constitutes an act of patent infringement. *Caraco Pharm. Labs., Ltd.*, 527 F.3d at 1283. If the patentee or NDA holder does not bring suit within 45 days of receiving notice of a Paragraph IV filing, the FDA will approve the ANDA immediately. If the patentee or NDA holder does bring suit within 45 days, the FDA may not approve the ANDA for 30 months unless a court decides that the patent at issue is invalid or not infringed. *Seattle Children's Hosp.*, 2011 U.S. Dist. LEXIS 145998 at *4. The Act also provides that the first company to file an ANDA containing a Paragraph IV certification for a listed patent receives an one-hundred-and-eighty day period of market exclusivity during which the FDA will not approve a later-filed Paragraph IV ANDA based on the same NDA. In 2003, Congress amended the Act to provide that the 180-day exclusivity period is triggered by the first-filer's commercial marketing of its generic drug product, but that the period of exclusivity would be forfeited if a subsequent ANDA filer obtained a final judgment of invalidity or non-infringement. *Id.* at *5.

*2. Factual Background*

Daiichi holds approved NDAs for Benicar and Benicar HCT. In connection with both NDAs, Daiichi listed patents '599 and '703 in the FDA's Orange Book. Mylan was the first applicant to file ANDAs based on the approved NDAs for Benicar and Benicar HCT. Both of Mylan's ANDAs contained Paragraph IV certifications for patents '599 and '703.

In response to Mylan's Paragraph IV certifications, Daiichi statutorily disclaimed the '703 patent pursuant to 35 U.S.C. § 253, but initiated infringement actions based on the '599 patent opposing both ANDAs. Ultimately, both of Mylan's ANDAs were found to have infringed the '599 patent, and Mylan's Paragraph IV certifications for that patent were thus converted into Paragraph III certifications (recognizing that the ANDA infringed on a patent, and that it should not be considered until that patent expired). Mylan's ANDAs, however, retained their Paragraph IV certifications as to the '703 patent because that patent, although disclaimed, remains listed in the Orange Book.

Mylan's ANDAs therefore continue to be entitled to receive 180-day exclusivity periods under the act, initiated by the marketing of its generic drugs. 21 U.S.C. § 355(j)(5)(V)(iv). However, if a subsequent filer obtains a final judgment of invalidity or non-infringement with respect to the '703 patent, Mylan must begin marketing within 75 days or forfeit its exclusivity period. 21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(AA).

In the instant cases, Apotex seeks final judgments of validity and non-infringement regarding the '703 patent as applied to its Benicar and Benicar HTC ANDAs. Mylan intervened in both cases, because such judgments would potentially eliminate the exclusivity periods for Mylan's competing generic drug products

Apotex initially filed *Apotex I*, which concerns its ANDA for Benicar, in 2012. Daiichi filed a motion to dismiss *Apotex I* for lack of subject matter jurisdiction in that case, arguing that there

can be no justiciable dispute concerning a disclaimed patent that is no longer enforceable. This Court granted that motion, but was reversed by the Federal Circuit Court of Appeals, which held that Apotex's allegations established a justiciable controversy. *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356 (Fed. Cir. 2015). Both Daiichi and Mylan filed writs of certiorari to the Supreme Court challenging the Federal Circuit's decision, both of which were subsequently denied. *Daiichi Sankyo, Inc. v. Apotex, Inc.*, 136 S.Ct. 481 (2015); *Mylan Pharmaceuticals Inc. v. Apotex Inc.*, 136 S.Ct. 485 (2015). During the pendency of the appeals, Apotex filed *Apotex II*, which concerns its ANDA for Benicar HTC. Apotex now moves for summary judgment in both *Apotex I* and *Apotex II* declaring that the '703 patent is not infringed by the filing of Apotex's ANDAs. Daiichi and Mylan, in separate briefs, oppose both motions based on the previously-pending writs of certiorari. Additionally, Mylan argues that Apotex lacks standing to bring these suits. Neither defendant, however, argues that the disclaimed '703 patent is infringed by Apotex's ANDAs.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 242, 91 L.Ed.2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Under Article III, only a plaintiff with a personal stake in a case or controversy has standing. *Gonzales v. North Twp.*, 4 F.3d 1412, 1415 (7th Cir. 1993). In order to establish standing, a party must demonstrate: (1) an alleged injury in fact, a harm suffered by the plaintiff that is concrete and actual or imminent; (2) causation, a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability, a likelihood that the requested relief will redress the alleged injury. *Caraco Pharm Labs., Ltd. v. Forest Laps., Ltd.,* 527 F.3d 1278, 1291 (Fed. Cir. 2008); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because standing is an indispensable part of the plaintiff's case, it must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, and with the same manner and degree of evidence as is generally required at that stage of the litigation. *Lujan*, 504 U.S. at 561.

**Discussion**

As an initial matter, this Court notes that both Daiichi and Mylan argued that this Court should defer its ruling until after the resolution of their pending writs of certiorari appealing the Federal Circuit's decision in *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356 (Fed. Cir. 2015). Because certiorari has since been denied, this Court disregards those arguments as moot.

Mylan contends that this Court cannot grant summary judgment in Apotex's favor because Apotex has failed to present evidence demonstrating that it has standing. Mylan asserts that Apotex has failed to adduce evidence demonstrating injury-in-fact because it has not shown that it has pending ANDAs in good standing such that the listing of the 703 patent in the Orange Book serves

as a "but-for" barrier to regulatory approval and market entry.[1]  Mylan further argues that Apotex

has failed to demonstrate redressability because, based on evidence drawn from the public record,

Mylan does not believe that Apotex would be able to obtain FDA approval to market its olmesartan

drug products in the United States.

      As the Federal Circuit noted in *Apotex, Inc. v. Daiichi Sankyo Co., Ltd.*, 781 F.3d at 1365, 35

U.S.C. § 271(e)(2) makes the filing of an ANDA with a paragraph IV certification an artificial act of

infringement and thereby allows litigation over the underlying patent to take place well before any

product entered the market and before any FDA regulatory approval, with the litigation serving to

remove one barrier to the product's subsequent marketing and approval.  Tentative approval, or

even a strong likelihood of approval by the FDA, are not prerequisites for the resolution of this

action.  *See Caraco*, 527 F.3d at 1295 ("Caraco has a complete generic drug product that has been

submitted to the FDA for approval, and no additional facts are required to determine whether this

drug product infringes the claims of Forest's '941 patent.").  Indeed, the Federal Circuit has found

similar injuries to be redressible even when remaining Orange Book patents might still exclude the

generic manufacturer from the drug market.  *Id.* at 1293.  All that is required to constitute an injury

and establish redressability is showing that a patent's listing constitutes an independent barrier to

entry into the drug market and that a judicial decision can remove that barrier; there is no need to

show that it is the only remaining barrier to entry.  *Id.* at 1292.

      Here, the '703 patent's listing in the Orange Book constitutes an independent barrier to the

drug market for both of Apotex's ANDAs that may be removed through a favorable decision from

this Court.  Because Apotex has filed ANDA's containing Paragraph IV disclaimers with respect to

---

[1] In its Rule 56.1 statement the only support that Apotex provided for its assertion that it had filed ANDAs for its Benicar and Benicar HTC based products was a citation to the paragraphs from its amended complaints alleging the same.  Because an allegation made in a complaint cannot properly support an assertion of fact, pursuant to Federal Rule of Civil Procedure 56(e)(1) this Court gave Apotex the opportunity to supplement its Rule 56.1 statements with evidence properly supporting that assertion.  Apotex subsequently filed supplemental Rule 56.1 statements demonstrating, by way of notices of receipt from the FDA, that it had filed ANDAs for both drug products.

Patent '703, it has standing to ask this Court to determine whether its ANDAs would infringe upon that patent which, although disclaimed, nonetheless serves as a barrier to entry into the marketplace by virtue of its continued Orange Book listing.

Turning to the merits of Apotex's motions, it is undisputed that Daiichi disclaimed every claim under patent '703 pursuant to 35 U.S.C. § 253. Non-infringement of the '703 patent follows as a matter of law from the fact that it has been formally disclaimed. *Altoona Publix Theatres v. Am. Tri-Ergon Corp.*, 294 U.S. 477, 492, 55 S.Ct. 455, 79 L.Ed. 1005 (1935). Accordingly, Apotex's ANDAs for Benicar and Benicar HTC do not infringe on the '703 patent.

**Conclusion**

For the foregoing reasons, Apotex's motions for summary judgment in *Apotex I* [103] and *Apotex II* [38] are granted.


SO ORDERED.


_____
Sharon Johnson Coleman
United States District Court Judge

DATED: January 8, 2016

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| APOTEX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case Nos. 12-cv-9295, 15-cv-3695 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| DAIICHI SANKYO, INC., DAIICHI | ) | |
| SANKYO CO., LTD., and MYLAN | ) | |
| PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Defendants. | | |

## ORDER

Defendants Daiichi Sankyo, Inc. and Daiichi Sankyo Co., Ltd., joined by intervenor-

defendant Mylan Pharmaceuticals, Inc., move this Court to reconsider its final judgments in these

matters under Fed. R. Civ. P. 59(e).  The defendants contend that Apotex has not met its burden of

establishing standing because Apotex is unlikely to have its ANDAs tentatively approved by the

FDA in light of past regulatory violations and partial import bans from two of Apotex's production

facilities.

As the Federal Circuit previously noted in this case,

> The general principle governing the [case or controversy] inquiry,
> including in situations where ultimate relief from harm depends on
> the action of a third party (here, the FDA's approval of the ANDA
> to allow marketing), is whether there is too high a degree of
> uncertainty about whether the judicial resolution, if in the plaintiff's
> favor, will matter in alleviating the harm alleged by the plaintiff . . . .
> That context-dependent standard has been applied to allow
> adjudication to remove one legal barrier to the plaintiff's obtaining
> the concrete alleviation of harm it seeks, notwithstanding potential
> independent barriers to achieving that result, as long as such other
> potential barriers are not unduly likely to deprive the adjudication of
> concrete effect.  Thus, in *Arlington Heights v. Metropolitan Housing
> Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 350 (1977),
> the Court found that a developer and a would-be resident had
> standing to challenge a zoning scheme that stood "as an absolute

barrier to constructing the housing" the developer sought to build,
stating: "If [the developer] secures the injunctive relief it seeks, that
barrier will be removed." *Id.* at 261, 97 S.Ct. 555.  Other barriers that
might doom actual development, such as inability to obtain financing,
though real, were not so certain as to bar standing to obtain removal
of the barrier at issue, *id.* at 261 & n. 7, 97 S.Ct. 555, because there
was a "substantial probability" that the "project w[ould] materialize"
if the adjudication occurred, *id.* at 264, 97 S.Ct. 555.  As a result, the
injuries to the developer and would-be residents were "'likely to be
redressed by a favorable decision.'"  *Id.* at 262, 97 S.Ct. 555 (quoting
*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917,
48 L.Ed.2d 450 (1976); *id.* at 264, 97 S.Ct. 555.

*Apotex, Inc. v. Daiichi Sankyo, Inc.,* 781 F.3d 1356, 1364–65 (Fed. Cir. 2015).

Here, the defendants have presented no evidence that the FDA *will not* approve Apotex's

ANDAs, but have instead offered speculation about what the FDA might do based on limited

evidence unrelated to the pending ANDAs.  Such speculation is wholly insufficient to demonstrate a

barrier "so certain as to bar standing to obtain removal of the barrier at issue" or to require this

Court "to engage in undue speculation as a predicate for finding that the plaintiff has the requisite

personal stake in the controversy." *Arlington Heights*, 429 U.S. at 262, 97 S.Ct. 555.  Even if the

defendants' request for discovery on this issue had been permitted, the evidence discovered could

only have fueled further speculation about what the FDA might ultimately do.  Accordingly, the

defendants' motions for reconsideration are denied.

SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

DATED:  April 13, 2016

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

APOTEX INC.,

                Plaintiff,

     v.

DAIICHI SANKYO, INC. and DAIICHI
SANKYO CO., LTD.,

                Defendants,

MYLAN PHARMACEUTICALS INC.,

                Intervenor-Defendant.

No. 12-CV-9295

Hon. Sharon Johnson Coleman

**FINAL JUDGMENT IN A CIVIL CASE**

     The Court having granted Plaintiff's Motion for Summary Judgment that Apotex's

ANDA 204089 does not infringe any claims of U.S. Patent No. 6,878,703 ("the '703 patent"), all

of which have been disclaimed, ECF No. 135, the Court hereby ORDERS, ADJUDGES, AND

DECREES that Final Judgment be and is hereby entered as follows:

1.   Apotex's ANDA 204089 does not infringe and the manufacture, marketing, use, offer for

     sale, sale and/or importation of the products that are the subject of Apotex Inc.'s ANDA

     204089 have not infringed, do not infringe, and would not, if marketed, infringe any

     claims of the '703 patent, as the '703 patent has been disclaimed;

2.   All other relief prayed for in the amended complaint, ECF No. 10, is denied, except that

     Apotex may move for costs, expenses and reasonable attorneys' fees, if any, pursuant to

     35 U.S.C. § 285;

3.   Mylan Pharmaceuticals Inc.'s motion to dismiss for lack of jurisdiction, ECF No. 111, is

     stricken as moot;

4. Mylan Pharmaceuticals Inc.'s motion to enter a briefing schedule to address issues remaining in this litigation, ECF No. 139, is stricken as moot in view of this Court's entry of this final judgment.  Mylan's motion in the alternative to alter or amend any existing judgment pursuant to Fed. R. Civ. P. 59(e), ECF No. 139, is therefore stricken as unnecessary and moot; and

5. Apotex Inc.'s motion for immediate entry of a final judgment, ECF No. 143, is stricken as moot in view of this Court's entry of this final judgment.

Date:  March 2, 2016                              By_____
                                                  Sharon Johnson Coleman
                                                  U.S. District Court

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

APOTEX INC.,

               Plaintiff,

    v.

DAIICHI SANKYO, INC. and DAIICHI
SANKYO CO., LTD.,

               Defendants,

MYLAN PHARMACEUTICALS INC.,

               Intervenor-Defendant.

No. 15-CV-3695

Hon. Sharon Johnson Coleman

## FINAL JUDGMENT IN A CIVIL CASE

The Court having granted Plaintiff's Motion for Summary Judgment that Apotex's

ANDA 204261 does not infringe any claims of U.S. Patent No. 6,878,703 ("the '703 patent"), all

of which have been disclaimed, ECF No. 66, the Court hereby ORDERS, ADJUDGES, AND

DECREES that Final Judgment be and is hereby entered as follows:

1. Apotex's ANDA 204261 does not infringe and the manufacture, marketing, use, offer for

    sale, sale and/or importation of the products that are the subject of Apotex Inc.'s ANDA

    204261 have not infringed, do not infringe, and would not, if marketed, infringe any

    claims of the '703 patent, as the '703 patent has been disclaimed;

2. All other relief prayed for in the complaint, ECF No. 1, is denied, except that Apotex may

    move for costs, expenses and reasonable attorneys' fees, if any, pursuant to 35 U.S.C.

    § 285;

3. Mylan Pharmaceuticals Inc.'s motion to dismiss for lack of jurisdiction, ECF No. 45, is

    stricken as moot;

4.  Mylan Pharmaceuticals Inc.'s motion to enter a briefing schedule to address issues remaining in this litigation, ECF No. 45, is stricken as moot in view of this Court's entry of this final judgment.  Mylan's motion in the alternative to alter or amend any existing judgment pursuant to Fed. R. Civ. P. 59(e), ECF No. 45, is therefore stricken as unnecessary and moot; and

5.  Apotex Inc.'s motion for immediate entry of a final judgment, ECF No. 72, is stricken as moot in view of this Court's entry of this final judgment.


Date:  <u>March 2, 2016</u>                    By _____

                                             Sharon Johnson Coleman
                                             U.S. District Court

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **APOTEX, INC.,** | |
| *Plaintiff,* | |
| **v.** | **Case No.: 12-CV-09295** |
| **DAIICHI SANKYO, INC. and DAIICHI SANKYO CO., LTD.** | **Judge Sharon Johnson Coleman** **Magistrate Judge Mary M. Rowland** |
| *Defendants,* | |
| **MYLAN PHARMACEUTICALS INC.** | |
| *Intervenor-Defendant.* | |
| **APOTEX, INC.,** | |
| *Plaintiff,* | |
| **v.** | **Case No.: 15-CV-03695** |
| **DAIICHI SANKYO, INC. and DAIICHI SANKYO CO., LTD.** | **Judge Sharon Johnson Coleman** **Magistrate Judge Mary M. Rowland** |
| *Defendants,* | |
| **MYLAN PHARMACEUTICALS INC.** | |
| *Intervenor-Defendant.* | |

<u>**NOTICE OF APPEAL**</u>

Notice is hereby given that Defendants Daiichi Sankyo, Inc. and Daiichi Sankyo Co., Ltd.

(collective "Daiichi Sankyo") hereby appeal to the United States Court of Appeals for the

Federal Circuit from the Final Judgments (D.I. 153 in C.A. No. 12-cv-9295, D.I. 82 in C.A. No.

**– APPX22 –**

15-cv-3695) entered on March 2, 2016, the Memorandum Opinions and Orders (D.I. 135 in C.A.

No. 12-cv-9295, D.I. 66 in C.A. No. 15-cv-3695) entered on January 8, 2016 granting Plaintiff

Apotex, Inc.'s summary judgment motions, the Orders (D.I. 167 in C.A. No. 12-cv-9295, D.I. 97

in C.A. No. 15-cv-3695) entered on April 13, 2016 denying Daiichi Sankyo's motions under

Fed. R. Civ. P. 59(e) to alter or amend the judgments, and from all other rulings, orders, decrees,

or judgments subsumed therein or otherwise now appealable as of right in these actions.


                                        Respectfully submitted,


Dated:  May 13, 2016                        __/s/ David C. Van Dyke_____
                                        David C. Van Dyke (#6204705)
                                        Emily E. Bennett (#6305461)
                                        Howard & Howard
                                        200 S. Michigan Avenue, Suite 1100
                                        Chicago, Illinois 60604
                                        Telephone: (312) 456-3641
                                        Facsimile: (312) 939-5617
                                        Email: dvd@h2law.com
                                              eeb@h2law.com


                                        Dominick A. Conde *(Pro Hac Vice)*
                                        Fitzpatrick, Cella, Harper & Scinto
                                        1290 Avenue of the Americas, 17th Floor
                                        New York, NY 10104
                                        Telephone: (212) 218-2255
                                        Facsimile: (212) 218-2200
                                        Email: dconde@fchs.com


                                        *Attorneys for Defendants Daiichi Sankyo, Inc. and
                                        Daiichi Sankyo Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2016, I provided service to all counsel by causing a true and correct copy of *Notice of Appeal* to be served on all counsel of record by electronic mail and/or as agreed to by the parties:

Dated:  May 13, 2016

*/s/ David C. Van Dyke*

David C. Van Dyke (#6204705)
Emily E. Bennett (#6305461)
Howard & Howard
200 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Telephone: (312) 456-3641
Facsimile: (312) 939-5617
Email:  dvd@h2law.com
        eeb@h2law.com

Dominick A. Conde *(Pro Hac Vice)*
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas, 17th Floor
New York, NY 10104
Telephone: (212) 218-2255
Facsimile: (212) 218-2200
Email: dconde@fchs.com

*Attorneys for Defendants Daiichi Sankyo, Inc. and Daiichi Sankyo Co., Ltd.*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| APOTEX INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>DAIICHI SANKYO, INC. and DAIICHI<br>SANKYO CO., LTD.,<br><br>        Defendants,<br><br>MYLAN PHARMACEUTICALS INC.,<br><br>        Intervenor-Defendant. | No. 12-CV-9295<br><br>Hon. Sharon Johnson Coleman |

## MYLAN'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Notice is hereby given that Intervenor-Defendant Mylan Pharmaceuticals Inc. ("Mylan") hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Judgment Order (ECF No. 153) entered March 2, 2016, and all orders and rulings underlying and following that final judgment, including but not limited to the Opinion and Order relating to summary judgment (ECF No. 135) and the Order denying Mylan's Motion to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e) (ECF No. 167). Mylan is also submitting the filing fee ($5.00) and docketing fee ($500.00) as required by 28 U.S.C. § 1917 and Federal Circuit Rule 52(a)(3)(A), and Federal Rule of Appellate Procedure 3(e).

**– APPX25 –**

Respectfully submitted,


By:  */s/ James Coughlan*
      *Attorneys for Intervenor-Defendant*
      *Mylan Pharmaceuticals Inc.*

James Coughlan
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL.  60603
312.324.8400

Shannon M. Bloodworth
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
202.654.6200

David L. Anstaett
Autumn N. Nero
Emily J. Greb
David R. Pekarek Krohn
Perkins Coie LLP
One East Main Street, Suite 201
Madison, WI  53703
608.663.7460

Dated:  May 13, 2016

**– APPX26 –**

## <u>CERTIFICATE OF SERVICE</u>

I, James B. Coughlan, hereby certify that on May 13, 2016, I electronically filed the foregoing **MYLAN'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

James P. White
**Husch Blackwell Sanders Welsh & Katz**
120 South Riverside Plaza
Chicago, IL 60606
James.white@huschblackwell.com


Steven E. Feldman
Leonard Friedman
Sherry L. Rollo
**Hahn Loeser & Parks LLP**
125 South Wacker, Suite 2900
Chicago, IL 60606
sfeldman@hahnlaw.com
lfriedman@hahnlaw.com
srollo@hahnlaw.com

David C. Van Dyke
Emily E. Bennett
Joseph W. Barber
**Howard & Howard, PLLC**
200 South Michigan Ave. Suite 1100
Chicago, IL 60604
dvd@h2law.com
ebennett@howardandhoward.com
jwbarber@howardandhoward.com


C. Austin Ginnings
Dominick A. Conde
Joshua Calabro
Nina Shreve
**Fitzpatrick Cella Harper & Scinto**
1290 Avenue of the Americas
New York, NY 10104
caginnings@fchs.com
dconde@fchs.com
jcalabro@fchs.com
nshreve@fchs.com


*/s/ James B. Coughlan*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| APOTEX INC.,<br><br>               Plaintiff,<br><br>     v.<br><br>DAIICHI SANKYO, INC. and DAIICHI<br>SANKYO CO., LTD.,<br><br>               Defendants,<br><br>MYLAN PHARMACEUTICALS INC.,<br><br>               Intervenor-Defendant. | No. 15-CV-3695<br><br>Hon. Sharon Johnson Coleman |

**MYLAN'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

Notice is hereby given that Intervenor-Defendant Mylan Pharmaceuticals Inc. ("Mylan") hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Judgment Order (ECF No. 82) entered March 2, 2016, and all orders and rulings underlying and following that final judgment, including but not limited to the Opinion and Order relating to summary judgment (ECF No. 66) and the Order denying Mylan's Motion to Alter or Amend Judgment Under Fed. R. Civ. P. 59(e) (ECF No. 97). Mylan is also submitting the filing fee ($5.00) and docketing fee ($500.00) as required by 28 U.S.C. § 1917 and Federal Circuit Rule 52(a)(3)(A), and Federal Rule of Appellate Procedure 3(e).

Respectfully submitted,


By:   */s/ James Coughlan*
      *Attorneys for Intervenor-Defendant*
      *Mylan Pharmaceuticals Inc.*

James Coughlan
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL.  60603
312.324.8400

Shannon M. Bloodworth
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
202.654.6200

David L. Anstaett
Autumn N. Nero
David R. Pekarek Krohn
Perkins Coie LLP
One East Main Street, Suite 201
Madison, WI  53703
608.663.7460

Dated:  May 13, 2016

**– APPX29 –**

## CERTIFICATE OF SERVICE

I, James B. Coughlan, hereby certify that on May 13, 2016, I electronically filed the foregoing **MYLAN'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

Steven E. Feldman
Leonard Friedman
Sherry L. Rollo
Daniel R. Cherry
**Hahn Loeser & Parks LLP**
125 South Wacker, Suite 2900
Chicago, IL 60606
sfeldman@hahnlaw.com
lfriedman@hahnlaw.com
srollo@hahnlaw.com
dcherry@hahnlaw.com

David C. Van Dyke
Emily E. Bennett
**Howard & Howard, PLLC**
200 South Michigan Ave. Suite 1100
Chicago, IL 60604
dvd@h2law.com
ebennett@howardandhoward.com

C. Austin Ginnings
Dominick A. Conde
Joshua Calabro
Nina Shreve
**Fitzpatrick Cella Harper & Scinto**
1290 Avenue of the Americas
New York, NY 10104
caginnings@fchs.com
dconde@fchs.com
jcalabro@fchs.com
nshreve@fchs.com

 /s/ James B. Coughlan

-3-

**– APPX30 –**

# United States Court of Appeals
## for the Federal Circuit

*Apotex Inc. v. Daiichi Sankyo, Inc.,* 2016-2073, -2075, -2076, -2078

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by HAHN LOESER & PARKS LLP, counsel for Appellee to print this document.  I am an employee of Counsel Press.

On **May 16, 2016** counsel has authorized me to electronically file the foregoing **PLAINTIFF-APPELLEE APOTEX INC.'S MOTION FOR SUMMARY AFFIRMANCE OR, ALTERNATIVELY, FOR EXPEDITED PROCEEDING** with the Clerk of Court using the CM/ECF System which will serve all EM/ECF registered counsel, including any of the following:

David C. Van Dyke
Emily E. Bennett
Howard & Howard
200 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
(312) 456-3641
dvd@h2law.com
eeb@h2law.com

Dominick A. Conde
Fitzpatrick, Cella, Harper & Scinto
1290 Avenue of the Americas,
17th Floor New York, NY 10104
(212) 218-2255
dconde@fchs.com

*Attorneys for Defendants-Appellants*
*Daiichi Sankyo, Inc. and Daiichi Sankyo Co., Ltd.*

James Coughlan
Perkins Coie LLP
131 South Dearborn Street
Suite 1700
Chicago, IL.60603
(312) 324-8400
JCoughlan@perkinscoie.com

Shannon M. Bloodworth
Perkins Coie LLP
700 Thirteenth Street, N.W.
Suite 600
Washington, D.C. 20005-3960
(202) 654-6200
SBloodworth@perkinscoie.com

David L. Anstaett
Autumn N. Nero
Emily J. Greb
David R. Pekarek Krohn
Perkins Coie LLP
One East Main Street, Suite 201
Madison, WI 53703
(608) 663-7460
DAnstaett@perkinscoie.com
ANero@perkinscoie.com
EGreb@perkinscoie.com
DPekarekKrohn@perkinscoie.com

*Counsel for Intervenor Defendant-Appellant*
*Mylan Pharmaceuticals Inc.*


Additionally, I will serve the following forgoing **via Express Mail and e-mail** by depositing two paper copies of each in an official depository of the U.S. Postal service on this date.


May 16, 2016

/s/ Robyn Cocho
Counsel Pres